# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ELIZABETH T. LYDE,
    *Plaintiff*,

v.

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,
    *Defendant*.

No. 3:17-cv-00094 (JAM)

**RULING ON CROSS MOTIONS TO REVERSE AND AFFIRM THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Elizabeth Lyde brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Social Security Administration denying her claim for supplemental security income and disability insurance benefits. For the reasons that follow, I will deny Lyde's motion to reverse the decision of the Commissioner (Doc. #22), and grant the Commissioner's motion to affirm (Doc. #23).

## BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Docs. #14-1 through #14-20, #21. Lyde first applied for Social Security Disability Insurance (SSDI) benefits on June 15, 2010, citing a number of impairments as sources of her disability, including depression, anxiety, post-traumatic stress disorder, personality disorders, substance dependence, obesity, carpal tunnel syndrome, and diabetes. An Administrative Law Judge (ALJ) denied Lyde's initial claim for benefits in a ruling dated January 27, 2012. Lyde appealed this decision to the Appeals Council, which upheld the decision of the ALJ. On subsequent appeal to this Court, I remanded the case to the Commissioner to "evaluate the significance of [Lyde]'s non-exertional limitations and, if necessary, to consider vocational expert testimony as to [Lyde]'s

1

ability to find work that exists in the national economy." *Lyde v. Colvin*, 2016 WL 53822, at *8 (D. Conn. 2016).

On remand, the Appeals Council vacated the ALJ's initial ruling and remanded the case for a complete reconsideration of Lyde's application. Doc. #14-12 at 53.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and

work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ can find a claimant to be disabled or not disabled at a particular step and can make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

On October 26, 2016, the ALJ again determined that Lyde is not disabled within the meaning of the Social Security Act. At Step One, the ALJ found that Lyde met the insured status requirements of the Social Security Act through June 30, 2012. Doc. #14-11 at 8. Lyde had not engaged in substantial gainful activity since July 1, 2008. *Ibid.* At Step Two, the ALJ ruled that Lyde has the following severe impairments: "diabetes mellitus, obesity, [and] major depressive disorder." *Ibid.*[1]

At Step Three, the ALJ determined that Lyde did not have any impairments or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 9.

---

[1] The ALJ omitted several of the severe impairments that had been listed as part of the ALJ's 2012 ruling, including: anxiety disorder, dysthemic disorder, antisocial personality disorder, status post carpal tunnel release, and polysubstance dependence.

3

At Step Four, the ALJ found that Lyde had "the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." *Id.* at 11. The ALJ also found that Lyde is subject to certain limitations in the type of work she can perform, including that "she is capable of sustaining simple, routine, repetitive work tasks that do not involve teamwork or closely working with the public; occasional bending, balancing, kneeling, twisting, squatting, crawling, and climbing but no climbing of ladders, ropes, or scaffolds." *Ibid.* At Step Four, the ALJ also determined that Lyde was unable to perform any past relevant work. *Id.* at 16.

At Step Five, after considering Lyde's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Lyde] can perform." *Ibid.* The three jobs identified were garment sorter, housekeeper, and laundry worker. *Id.* at 17. The ALJ found that there are 950 jobs as a garment worker, 20,560 jobs as a housekeeper, and 230 jobs as a laundry worker available in Connecticut. *Ibid.* He also found that there were 55,700 jobs as a garment sorter, 1.6 million jobs as a housekeeper, and 231,000 jobs as a laundry worker nationally. *Ibid.* As a result of the ALJ's conclusions concerning Lyde's RFC and her ability to engage in available jobs, the ALJ found that Lyde was not disabled. *Id.* at 18.

Lyde has filed a motion to reverse the Commissioner's decision and to remand the case for a *de novo* hearing. The Commissioner has filed a cross motion seeking affirmance of the decision of the ALJ. For the reasons that follow, I will deny Lyde's motion to reverse and grant the Commissioner's motion to affirm.

## DISCUSSION

The Court may ordinarily "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the

decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam).

Lyde claims four errors: (1) that the ALJ did not adequately develop the administrative record, Doc. #22-2 at 3; (2) that the ALJ engaged in an improper selective review of the record to reach his conclusions, *id.* at 12; (3) that the ALJ failed to assess Lyde's impairments in combination, *id.* at 17; and (4) that the ALJ's vocational findings are not supported by substantial evidence, *id.* at 19. I will assess each of these claims in turn.

### *Adequate development of the record*

Lyde claims that the ALJ did not adequately develop the administrative record, because the ALJ failed to secure the opinion of her primary treating physician, Dr. Prior, about Lyde's RFC. Doc. #22-2 at 3–4. It is well established that "[t]he ALJ, unlike a judge in a trial, must [himself] affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). This duty arises from the Commissioner's regulatory duty to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)–(f), and exists even when, as here, the claimant is represented by counsel at the administrative hearing. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *see also Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 537 (S.D.N.Y. 2015). Of course, the duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete

5

medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks and citation omitted).

I do not agree that the ALJ failed to develop the record. "In order to fully develop the record, a medical source statement is not necessarily required, so long as 'the record contains sufficient evidence from which an ALJ can assess the Lyde's residual functional capacity.'" *Rivera v. Berryhill*, 2018 WL 1521824, at *4 (D. Conn. 2018) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)) (quotation marks omitted). Here, as in *Rivera*, the ALJ made his RFC determination based on a substantial record, including 1,200 pages of medical records and treating physician's notes. *See* Doc. #14-11 at 13–15. I therefore find that the ALJ did not err in failing to further develop the record.

### *Alleged selective review of the record*

Lyde argues that the ALJ engaged in selective review of the record, cherry-picking facts favorable to his disposition rather than reviewing the record as a whole. For example, Lyde alludes to the fact that, at Step Two, the remand ruling was less favorable to her than the initial ruling because the remand ruling included fewer severe impairments and omitted one limitation from the RFC ("occasional stooping"). *See supra*, note 1; Doc. #22-2 at 13. But Lyde does not show why the remand ruling lacked substantial evidence for the Step Two determination. Nor does she show how the occasional stooping limitation was material to the outcome at Step Five.

Lyde next alleges that the ALJ misstated the record when he cited medical evidence that Lyde's diabetes had improved since the original hearing. But the ALJ's discussion of Lyde's diabetes did not misstate the record and are in fact supported by the evidence in the record. For instance, Lyde complains that the ALJ wrongly concluded that she was no longer taking the

medication Metformin in December 2010. *See* Doc. #22-2 at 13. Yet the chart note she cites reflects that Lyde indeed was "not taking Metformin." *Ibid.*

Lyde next claims that the ALJ mischaracterized medical notes relating to her blood sugar levels. The ALJ cited evidence indicating that Lyde's blood sugar levels were improving but still too high in October 2012, and were "much better and even at times too low" by February 4, 2013. Doc. #14-16 at 42, 49. Lyde suggests that it was improper for the ALJ to characterize blood sugar levels in the low 100s as "improved." Dr. Prior, by comparison, described those blood sugar levels as "pretty good for her," and Lyde stated, without evidence, that levels over 100 are "not normal." Doc. #22-2 at 14. Because it is logical that a medical condition can improve while still being far from ideal, I find that the ALJ did not err in the way he characterized the notes about Lyde's blood sugar results.

Lyde cites evidence that she contends would have supported a contrary ruling. Doc. #22-2 at 15–16. But Lyde's own recitation of her blood sugar results from 2012 to 2016 on those pages supports the ALJ's finding that Lyde's diabetes was managed or had improved subsequent to the first hearing before the ALJ in 2012. Lyde does not offer any particular theory of how the finding that her diabetes was under control improperly influenced the RFC determination.

Lyde has not shown that the ALJ engaged in an improper selective review of the record. The fact that the ALJ did not describe or characterize the evidence precisely in the manner that Lyde would have liked does not mean that the ALJ has engaged in an improper selective review or reliance on the record.

### *Alleged failure to assess impairments in combination*

Lyde argues that the ALJ failed to assess her impairments in combination. The ALJ, however, expressly noted that "the undersigned must determine whether the claimant's

7

impairment *or combination of impairments* is of a severity to meet or medically equal" the disability criteria. Doc. #14-11 at 7 (emphasis added). The ALJ stated that two of Lyde's severe impairments, diabetes and obesity, are not covered by the listings but would be considered in combination with her other physical and mental impairments. Doc. #14-11 at 9. The ALJ assessed Lyde's activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation to see if she satisfied the criteria for assessment under "paragraph B." Doc. #14-11 at 9–10. The ALJ found that Lyde had mild restriction in activities of daily living, *id.* at 10; moderate difficulties in social functioning, *ibid.*; moderate difficulties with respect to concentration, persistence, and pace, *ibid.*; and no episodes of decompensation, *ibid.* The ALJ also considered whether Lyde met the criteria under "paragraph C," but found "the evidence fail[ed] to establish the presence" of the necessary criteria." *Ibid.* At the end of Finding Four, the ALJ found that "the following residual functional capacity assessment [for Steps Four and Five] reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id*. at 11. The ALJ concluded that "[t]he severity of the claimant's mental impairments, *considered singly and in combination*, do not meet or equal the criteria of listing 12.04." *Id.* at 9 (emphasis added). These conclusions make clear that the ALJ considered all of Lyde's impairments not only individually but also in combination when he made his RFC determination.

*Vocational analysis*

Lyde disputes the ALJ's reliance on the vocational expert with respect to the numbers of available jobs. Although Lyde claims that the expert was never "qualified" by the ALJ as an expert, Doc. #22-2 at 24, the record shows that the ALJ specifically inquired about the vocational expert's qualification. Doc. #21 at 29.

8

Lyde otherwise challenges the basis for the vocational expert's numerical data. But in order for an ALJ to reasonably credit testimony from a vocational expert, it is sufficient that "[t]he vocational expert identified the sources he generally consulted to determine such figures." *Bradley v. Berryhill*, 2017 WL 3314000, at *3–*4 (D. Conn. 2017) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008)); *see also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (noting that "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally" and concluding that "the vocational expert was not required to articulate a more specific basis for his opinion, and the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record"); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*) (noting that even if "the expert was unable to fully explain how he arrived at the number of certain jobs in the economy," it is sufficient if the expert "identified the sources he generally consulted to determine such figures" in light of "the marked absence of any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation") (internal quotations omitted).

The vocational expert testified twice, and the ALJ accounted for the objections of Lyde's counsel to the basis for his testimony, concluding that "[d]espite the objections, the undersigned finds that the vocational expert offered reliable testimony regarding the number of available jobs in the national and local economy." Doc. #14-11 at 17. I conclude that there was substantial evidence for the ALJ's conclusion and that the ALJ did not err as a matter of law by relying on the expert's testimony. *See also Cortes v. Berryhill*, 2018 WL 1392903, at *11 (D. Conn. 2018)

(despite "dubious methodology" of vocational expert, the expert "need not provide the exact number of jobs available for a position," and the ALJ's "determination that jobs [claimant] could perform existed in significant numbers in the national economy was supported by substantial evidence").

## CONCLUSION

For the foregoing reasons, the motion to reverse the decision of the Commissioner (Doc. #22) is DENIED, and the motion to affirm the decision of the Commissioner (Doc. #23) is GRANTED.

It is so ordered.

Dated at New Haven this 29th day of September 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge